## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Santravis Cobb,
     Petitioner,

vs

Case No. 1:08cv896
(Barrett, J.; Hogan, M.J.)

Warden, Chillicothe Correctional
Institution,
     Respondent.

## REPORT AND RECOMMENDATION

Petitioner, a prisoner in state custody at the Chillicothe Correctional Institution in Chillicothe, Ohio, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 with the assistance of counsel from the Ohio Public Defender's Office. This matter is before the Court on the petition, respondent's "Answer/Return Of Writ" with exhibits, and petitioner's "traverse" in reply to the return of writ. (Docs. 2, 5, 10).

### Background

On March 13, 2006, the Scioto County, Ohio, grand jury returned a two-count indictment charging petitioner with first-degree-felony drug possession and trafficking offenses; the indictment also contained a major drug offender specification and forfeiture specification. (Doc. 5, Ex. 1).

It appears from the record that petitioner appeared before the Scioto County Common Pleas Court for arraignment on April 13, 2006, where counsel was appointed to represent him. (*See id.,* Ex. 7, p. 2). Pretrial and suppression hearings were held on May 4 and 5, 2006, and the trial was scheduled to commence on May 8, 2006. (*Id.*).

On the morning of the scheduled trial date, a new, privately retained attorney filed a motion requesting that he be allowed to "substitute in as defense counsel," to replace petitioner's court-appointed attorney. (*See id.,* Ex. 2 & May 8, 2006 Hearing on Motion to Substitute Counsel Tr. 2). A hearing was held on the record, where the retained attorney also requested a continuance of the trial date for the purpose of preparing a defense. (*Id.,* May 8, 2006 Hearing on Motion to Substitute Counsel Tr. 3). Petitioner's court-appointed attorney addressed the court as well, stating:

> ....The case was set for trial on the 26th with the first pre-trial on the 4th. When, on that date we learned that Mr. Cobb was being considered as someone who has done other acts, someone who is above the wholesale level. This stuff only became known to us on the date of the first pre-trial, last Thursday, four days ago and then they presented us since that time supplemental discovery maybe four or five times so that there [are] ten witnesses now. I don't feel adequately prepared for that.
>
> I prepared twelve hours Saturday, twelve hours Sunday. I prepared half of my testimony. After this trial date today I'm going to have to go back in the office for probably another eight hours to prepare for cross examination tomorrow and I don't think it's fair to Mr. Cobb.... The case only looked strong ... on Thursday when they talked about this other acts stuff that there's coming in co-defendants who are going to testify against him. We didn't know that.... I just don't think it's fair.

(*Id.*, Tr. 3-4).

After hearing further arguments by the two attorneys, as well as the prosecuting attorney who opposed any continuance of the trial date, the court overruled the motion for leave to substitute counsel on the record. (*Id.,* Tr. 6). In so ruling, the court stated:

> I ... want to add for the record that I had two or three other cases that

were continued on Friday in anticipation of this going to trial and not requiring other counsel that would have to prepare over the weekend. We had no indication whatsoever that other counsel was even considered.

(*Id.*).

At that point, petitioner "entered into negotiations that resulted in a no contest plea to both counts of the indictment." (*See id.,* Ex. 7, p. 3). Petitioner entered the plea at a hearing held on the record on May 8, 2006. (*See id.,* May 8, 2006 Plea and Sentencing Tr.). It appears from the record that petitioner agreed as a term of the plea bargain to the imposition of consecutive ten-year terms of imprisonment totaling twenty (20) years, and that in exchange, no additional sentence was to be imposed based on petitioner's status as a "major drug offender" on the attached specification. (*Id.,* Tr. 2, 21). In a Judgment Entry filed May 10, 2006, petitioner was sentenced in accordance with the plea agreement to consecutive mandatory ten-year prison terms "for a total of 20 years." (*Id.,* Ex. 4, pp. 3-4).

With the assistance of the same attorney who had sought to replace petitioner's court-appointed counsel at the trial level, petitioner timely appealed to the Ohio Court of Appeals, Fourth Appellate District, raising two assignments of error:

1, Whether the trial court erred as a matter of law when it denied defendant-appellant's request to continue his trial to permit privately retained counsel to represent him?

2. Whether the trial court erred as a matter of law [under *Blakely v. Washington,* 542 U.S. 296 (2004), and *State v. Foster*, 845 N.E.2d 470 (Ohio 2006),] when it sentenced the defendant-appellant to maximum consecutive sentences?

(*See id.,* Ex . 5).

On April 17, 2007, the Ohio Court of Appeals overruled the assignments of error and affirmed the trial court's judgment. (*Id.,* Ex. 7).

Petitioner filed a *pro se* appeal to the Ohio Supreme Court. In his memorandum in support of jurisdiction, he re-asserted the two claims of error that had been

presented to the Ohio Court of Appeals and also claimed as additional propositions of law that (1) his no contest plea was invalid because he believed when he entered the plea that he could challenge his stipulated sentence on appeal; and (2) his appellate counsel was ineffective in failing to raise on appeal the claim contesting the no contest plea "to an agreed sentence which [petitioner] though[t] he had the right to challenge" on appeal. (*See id.,* Ex. 8). On October 3, 2007, the Ohio Supreme Court denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 9).

In the meantime, on June 5, 2007, petitioner also filed with the Ohio Court of Appeals, Fourth Appellate District, a timely *pro se* application for reopening of the appeal under Ohio R. App. P. 26(B), raising the same claim of ineffectiveness on the part of his appellate counsel that he had separately presented in his appeal to the Ohio Supreme Court. (*Id.,* Ex. 10). Thereafter, petitioner amended the application to add another ineffective assistance of appellate counsel claim based on counsel's failure to assert as an assignment of error that "[t]he trial court erred to the prejudice of appellant by imposing consecutive terms of imprisonment in violation of R.C. 2941.25 and in violation of appellant's Fifth and Fourteenth Amendment[] rights against double jeopardy." (*Id.,* Ex. 11).

On September 28, 2007, the Ohio Court of Appeals denied petitioner's reopening application after addressing and rejecting both ineffective assistance of appellate counsel claims on the merits. (*Id.,* Ex. 14). Respondent states that petitioner did not appeal this decision to the Ohio Supreme Court. (*Id.,* Brief, p. 6).

Over seven months later, on May 9, 2008, counsel from the Ohio Public Defender's Office filed a delayed application for reconsideration under Ohio R. App. P. 26(A) with the Ohio Court of Appeals on petitioner's behalf. (*Id.,* Ex. 15). In the application, counsel contended that the Ohio Court of Appeals had erred in rejecting the double jeopardy claim asserted as a basis for finding that petitioner's appellate counsel was ineffective; specifically, counsel contended that the Ohio Supreme Court's April 9, 2008 decision in *State v. Cabrales,* 886 N.E.2d 181 (Ohio 2008), which resolved a conflict among the lower appellate courts regarding the standard for determining allied offenses of similar import, mandated that the drug possession and trafficking offenses charged against petitioner be deemed allied offenses that should have been merged for sentencing purposes. (*See id.*).

On June 30, 2008, the Ohio Court of Appeals denied the delayed application for

reconsideration, reasoning in pertinent as follows:

> After carefully reviewing appellant's application, we conclude that he has not called to this court's attention an error in our judgment, nor has he raised an issue that was either not considered or fully considered when it should have been. Although *Cabrales* appears to have overruled prior decisions from this court involving the question of allied offenses of similar import and a person who has been convicted of both trafficking and possessing drugs, ... at the time appellant filed his application to reopen [the prior precedent that was relied on by the court in denying the application] was good law in this district. Appellant could have appealed our denial of his application, but he chose not to do so. Moreover, if this court reopened every case potentially affected by a later decision from the Supreme Court, the finality of every judgment becomes suspect.

(*Id.,* Ex. 16).

Petitioner's counsel filed a timely appeal from this decision to the Ohio Supreme Court. (*Id.,* Ex. 17). On October 15, 2008, the Ohio Supreme Court summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 18).

Petitioner's counsel from the Ohio Public Defender's Office next commenced the instant federal habeas action on petitioner's behalf. In the petition filed on December 29, 2008, petitioner alleges two grounds for relief:

**Ground One:** Denying a criminal defendant substitution of counsel for trial violates the defendant's rights to due process and counsel under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution....

**Ground Two:** Failing to order the resentencing of a criminal defendant following a clarification of the law that would result in a sentence reduction is a violation of the Due Process and Double Jeopardy Clauses....

(Doc. 2, pp. 16-18).

5

In the return of writ filed in response to the petition, respondent contends that petitioner has waived his second ground for relief, which he procedurally defaulted in the state courts, and that petitioner has not demonstrated he is entitled to habeas relief based on the merits of the claim alleged in his first ground for relief. (Doc. 5, pp. 8-18).

## OPINION

### A. Petitioner Is Not Entitled To Relief Based On The Claim In Ground One Challenging The Denial Of His Motion For Substitution Of Counsel

In Ground One of the petition, petitioner alleges that he was denied due process and his Sixth Amendment right to counsel of his own choosing when the trial court denied a motion filed on his behalf the morning the trial was scheduled to commence for substitution of his court-appointed counsel by a retained attorney, who also requested a continuance in order to prepare a defense. (Doc. 2, pp. 16-17; *see also* Doc. 5, May 8, 2006 Hearing on Motion to Substitute Counsel Tr.). This claim, which petitioner exhausted in the state direct review proceedings, is subject to review on the merits.

The Ohio Court of Appeals was the last state court to issue a reasoned decision addressing the claim of constitutional error. In overruling petitioner's assignment of error, the court made findings of fact, which are presumed correct under 28 U.S.C. § 2254(e)(1),[1] and ruled in relevant part as follows:

> The Sixth Amendment provides, "[i]n all criminal prosecutions, the accused shall enjoy the right \*\*\* to have the Assistance of Counsel for his defence." U.S. Const. Amend. VI. "[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an

---

[1]Specifically, 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Petitioner has neither cited nor presented any evidence to rebut the Ohio Court of Appeals' factual findings quoted herein. Therefore, he has not shown that such findings are erroneous.

effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States* (1988), 486 U.S. 153, 159.... Thus, "[a] defendant has only a *presumptive* right to employ his own counsel."... "'[T]he important right to counsel of choice is not absolute; it must be balanced against the court's authority to control its own docket, and a court must beware that a demand for counsel may be utilized as a way to delay proceedings or trifle with the court.'"...

Factors to consider in deciding whether a trial court erred in denying a defendant's motion to substitute counsel include the timeliness of the motion and whether there was a conflict between the attorney and the client that was so great that it resulted in a total lack of communication preventing an adequate defense.... "In addition, courts should 'balanc[e] *** the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice."'... A trial court's decision regarding the substitution of counsel is within the sound discretion of the trial court....

Likewise, the grant or denial of a continuance is a matter that is entrusted to the sound discretion of the trial court.... In evaluating a motion for continuance, a court should consider, *inter alia,* the length of the delay requested; the inconvenience to the litigants, witnesses, opposing counsel, and the court; and whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived....

\*\*\*\*

Under the circumstances in this case, we find no abuse of the trial court's discretion in denying Cobb's request for a continuance to enable privately retained counsel to enter an appearance and prepare the defense.

First, the motion for continuance was untimely, having been first presented to the trial court on the morning of trial. Second, appellant failed to indicate on the record the length of the delay requested. A defendant's request to substitute retained counsel of his choice must be timely and not disrupt the trial proceedings.... A trial court does not

7

abuse its discretion in denying a motion for continuance made on the morning of trial for purposes of allowing additional time to prepare a defense where defense counsel was aware of the facts and circumstances several days before trial....

Third, continuance of the trial in this case would have inconvenienced the witnesses, opposing counsel, and the court. Vigorously opposing the requested continuance, the state advised the court that it was ready to proceed and had 15 witnesses to testify at the trial, including one who had been transported from a correctional institution.

Fourth, the trial court could have reasonably decided that appellant's untimely request for a continuance did not outweigh the court's authority to control its own docket.... The trial court noted that just three days prior to the scheduled trial in this case it had granted continuances in other cases that were ready to proceed in order to accommodate the trial scheduled in this case. And rescheduling of the trial would have been difficult because both the state and the trial court had busy trial schedules for several months after the trial date.

Fifth, the record does not indicate that a conflict existed between Cobb and his appointed counsel, who represented Cobb throughout all pretrial proceedings. In considering Cobb's motion to substitute counsel, the trial court expressly noted that Cobb had at no time expressed dissatisfaction with his appointed counsel. Even on the date of trial, Cobb did not assert an irreconcilable conflict or a complete breakdown in communication with his appointed attorney.

Appointed counsel informed the court on the morning of trial that he became aware at a pretrial hearing held on May 4, 2006 of the complexity of the case against Cobb and his difficulty in preparing for the May 8th trial date. However, appointed counsel did not voice any reservations during the pretrial hearings concerning preparation for trial or the need for a continuance. When an accused has previous opportunities but waits until the last minute, i.e., the morning of trial, to request a substitution of counsel and a continuance, the court may infer the motions were made in bad faith for the purpose of delay....

8

Finally, ... the record reflects that Cobb signed an affidavit of indigency in April 2006 indicating he was financially unable to retain private counsel. In requesting substitution of privately retained counsel in May 2006, he did not assert that his financial situation had changed since he signed the affidavit. Appellate courts have upheld a trial court's denial of substitution of counsel and a continuance filed on the day of trial in such circumstances....

(Doc. 5, Ex. 7, pp. 4-8) (footnote and state case citations omitted) (emphasis in original).

In so ruling, the state appellate court did express concerns in a footnote about the State's disclosure of "supplemental discovery" to the defense four days before the trial was scheduled to commence. Specifically, the court emphasized that if petitioner's court-appointed attorney had moved for a continuance of the trial at the pretrial hearings held on May 4 and 5, 2006, when the disclosure was made, "the trial court would have been hard pressed to justify denying" the motion; the court noted further that its decision "should not be viewed as condoning belated discovery practices by the state" and that, given the "last minute disclosures by the state" in the instant case, "we would give rigorous scrutiny to a decision denying a timely request for a continuance." (*Id.*, p. 7 n.1).

In this federal habeas case, the applicable standard of review governing the adjudication of petitioner's claim in Ground One challenging the trial court's denial of his motion for substitution of counsel is set forth in 28 U.S.C. § 2254(d). Pursuant to this standard, petitioner is not entitled to relief unless the state courts' adjudication of his claim resulted in a decision that (1) is contrary to, or involves an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998).

A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently

than the Supreme Court has on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942. An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.).

Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also Bell v. Cone,* 535 U.S. 685, 694 (2002); *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942.

The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

In this case, although the Ohio Court of Appeals primarily relied on state cases in addressing petitioner's claim of constitutional error, it utilized standards of review that comport with applicable, well-established Supreme Court precedents, and reasonably applied those standards in rejecting petitioner's claim on the merits.

As the Ohio Court of Appeals apparently understood, it is well-settled that the Sixth Amendment right to counsel encompasses "the right of a defendant who does not require appointed counsel to choose who will represent him."[2] *See United States v. Gonzalez-Lopez,* 548 U.S. 140, 144 (2006) (citing *Wheat v. United States,* 486 U.S.

---

[2]*But cf. Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 624-25 (1989) (holding that the Sixth Amendment does not entitle indigent defendants to the appointment of counsel of their own choosing).

10

than the Supreme Court has on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942. An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.).

Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also Bell v. Cone,* 535 U.S. 685, 694 (2002); *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942.

The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

In this case, although the Ohio Court of Appeals primarily relied on state cases in addressing petitioner's claim of constitutional error, it utilized standards of review that comport with applicable, well-established Supreme Court precedents, and reasonably applied those standards in rejecting petitioner's claim on the merits.

As the Ohio Court of Appeals apparently understood, it is well-settled that the Sixth Amendment right to counsel encompasses "the right of a defendant who does not require appointed counsel to choose who will represent him."[2] *See United States v. Gonzalez-Lopez,* 548 U.S. 140, 144 (2006) (citing *Wheat v. United States,* 486 U.S.

---

[2]*But cf. Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 624-25 (1989) (holding that the Sixth Amendment does not entitle indigent defendants to the appointment of counsel of their own choosing).

153, 159 (1988), and *Powell v. Alabama,* 287 U.S. 45, 53 (1932)). However, as the state appellate court also understood, the right is not absolute. *See id.* (citing *Wheat,* 486 U.S. at 159); *see also United States v. Mooneyham,* 473 F.3d 280, 291 (6th Cir.), *cert. denied,* 552 U.S. 1009 (2007). The Supreme Court has recognized that a trial court has "wide latitude in balancing the right to counsel of choice against the needs of fairness ... and against the demands of its calendar." *Gonzalez-Lopez,* 548 U.S. at 152 (citing *Wheat,* 486 U.S. at 163-64, and *Morris v. Slappy,* 461 U.S. 1, 11-12 (1983)).

The Supreme Court's decision in *Morris* is particularly instructive here. In *Morris,* the petitioner's initial attorney was hospitalized shortly before trial, and six days before the scheduled trial date, a colleague was substituted to represent petitioner at trial. *Morris,* 461 U.S. at 5. On the first two days of trial, petitioner made comments complaining about the inadequacy of his new counsel's investigation and the lack of time for preparation, which the trial court construed as a request for a continuance; the request was denied. *See id.* at 6-8. On the third day of trial, petitioner presented the trial court with a petition, claiming that he was "unrepresented by counsel" and expressing dissatisfaction with his new attorney's performance. *Id.* at 8. The court treated the petition as a renewed request for a continuance until petitioner's original attorney could represent him again; the request was denied. *Id.* At that point, the petitioner announced that he would not cooperate at the trial, and against counsel's advice, refused to take the stand to testify in his defense. *Id.* at 8-9.

In addressing the question whether the court's denial of the petitioner's requests for continuance effectively deprived petitioner of his Sixth Amendment right to counsel of choice, the Court stated:

> Trial judges require a great deal of latitude in scheduling trials. Not the least of their problems is assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates the right to the assistance of counsel.

*Morris,* 461 U.S. at 11-12 (quoting *Ungar v. Sarafite,* 376 U.S. 575, 589 (1964)). The Court held that the trial court was "abundantly justified in denying [the petitioner's]

midtrial motion for continuance so as to have [his original attorney] represent him," because "it could reasonably have concluded that [the petitioner's] belated requests to be represented by [the attorney] were not made in good faith but were a transparent ploy for delay." *Id.* at 13.

Although *Morris* was decided in the context of the denial of a request for a continuance, the decision is pertinent to the issue to be addressed herein involving the denial of a request for substitution of counsel. *Cf. Henness v. Bagley,* No. 2:01cv43, 2007 WL 3284930, at *46 (S.D. Ohio Oct. 31, 2007) (unpublished); *see also Charley v. Bagley,* No. 1:03cv1607, 2006 WL 1624240, at *8 (N.D. Ohio June 2, 2006) (unpublished) (denying habeas relief because the Ohio appellate court's application of *Morris* in upholding the trial court's refusal to appoint substitute counsel was reasonable).

As the court stated in *Henness, supra,* 2007 WL 3284930, at *46:

The timing of the request, any delay in the proceedings, and the inconvenience to the trial participants are all factors for a trial court to consider when deciding either a motion for a continuance or a request for new counsel. Not to be ignored, however, is the reason for the request, as *Morris* demonstrates. If the attorney-client relationship is such that the attorney is able to provide competent representation, then the client's dislike of or disagreement with his attorney generally cannot provide a basis for a continuance or appointment of new counsel. Otherwise, a defendant could prolong his trial indefinitely, repeatedly claiming not to trust or be able to work with his attorney, regardless of the attorney's preparedness or willingness and ability to provide competent representation to the client....

Here, neither the trial court's denial of petitioner's request for new counsel nor the Ohio Court of Appeals' decision upholding that ruling are unreasonable under *Morris*.

First, as in *Morris,* the Ohio Court of Appeals properly considered the timing of petitioner's request, made belatedly on the first day of trial for the purpose of allowing additional time to prepare a defense, as well as the resulting inconvenience to "the witnesses, opposing counsel, and the court." In opposing the motion for substitution of counsel, the prosecutor pointed out that both the prosecutor's office

and the court had such busy schedules, with a "number of cases set over the summer on a weekly basis," that it was difficult to even schedule the May 8th trial date at the initial pretrial conference in order to comply with speedy trial time constraints. (*See* Doc. 5, May 8, 2006 Hearing on Motion to Substitute Counsel Tr. 5). Although retained counsel indicated that "as part of my Motion for Leave to Substitute[,] I had obviously prepared a ... Motion for a continuance which did contain a speedy trial waiver," by that point, the State had "fifteen witnesses standing by," including a prisoner who had been transported to the courthouse from a state penal institution. (*See id.,* Tr. 6). In addition, by that point, the trial court also was inconvenienced because, in the absence of any "indication whatsoever that other counsel was even considered," it had continued "two to three other cases" on its "overcrowded docket" on the Friday before the scheduled Monday trial date "in anticipation of this going to trial." (*Id.*).

Second, as the Ohio Court of Appeals further pointed out in rejecting petitioner's claim, petitioner has not shown that his relationship with his court-appointed attorney was such that the attorney was unable to provide competent representation. In overruling petitioner's motion for leave to substitute counsel, the trial court expressly noted that petitioner had never indicated that he was even considering other counsel to represent him. Moreover, there is no evidence in the record to suggest that petitioner had any problems or conflicts with his appointed counsel, who prior to May 8, 2006, "never voic[ed] any reservations during pretrial hearings concerning preparation for trial or the need for a continuance." (*See* Doc. 5, Ex. 7, p. 7). Indeed, at the hearing on the motion to substitute counsel, petitioner's appointed counsel indicated that he had already spent an extensive amount of time over the previous weekend preparing for trial and planned to return to his office after the first day of testimony "for probably another eight hours to prepare for cross examination." (*Id.,* May 8, 2006 Hearing on Motion to Substitute Counsel Tr. 3-4).

Instead, the only concern that retained and court-appointed counsel conveyed to the court at the hearing pertained to both attorneys' inability to adequately prepare a defense responding to the State's belated "supplemental discovery" provided four days earlier at a pretrial conference that petitioner "was being considered as someone who has done other acts, someone who is above the wholesale level." (*See id.,* Tr. 3). As the Ohio Court of Appeals noted, if counsel had timely moved for a continuance at the pretrial conference, the trial court "would have been hard pressed" to justify the

denial of a continuance.[3] However, no request for a continuance was asserted at that time; instead, petitioner waited until the first day of trial four days later to seek a continuance by way of the motion for substitution of counsel, after witnesses, opposing counsel, and the trial court had been inconvenienced. Under these circumstances, in the absence of any evidence of conflicts or other problems in petitioner's relationship with appointed counsel, it was reasonable for the Ohio Court of Appeals to conclude that the motion for substitution of counsel was "not made in good faith but w[as] a transparent ploy for delay," *Morris,* 461 U.S. at 13. (*See* Doc. 5, Ex. 7, p. 7).[4]

The Ohio Court of Appeals' determination also comports with Sixth Circuit precedents, which hold that a motion for new counsel is "addressed to the sound discretion of the trial court." *United States v. Trujillo,* 376 F.3d 593, 606 (6th Cir. 2004) (quoting *United States v. White,* 451 F.2d 1225, 1226 (6th Cir. 1971) (per curiam)); *see also Mooneyham,* 473 F.3d at 291. The Sixth Circuit cites four factors

---

[3]It is further noted that if such an issue had been presented herein, the Court's inquiry in addressing the challenge to the trial court's denial of the motion for continuance would turn on whether the court's ruling was "so arbitrary as to violate due process." *See Foley v. Parker,* 488 F.3d 377, 389 (6th Cir. 2007), *cert. denied,* 128 S.Ct. 2507 (2008); *see also Ungar,* 376 U.S. at 589. Factors to be considered in addressing this separate issue include the length of the requested delay; whether other continuances were requested and granted; the balanced convenience or inconvenience to the litigants, witnesses, counsel, and the court; whether the requested delay was for legitimate reasons; whether the defendant contributed to the circumstance which gave rise to the request for a continuance; the complexity of the case; and whether the denial of a continuance resulted in identifiable prejudice to the petitioner's case or, conversely, whether a continuance would have added something to the defense. *See, e.g., Wilson v. Mintzes,* 761 F.2d 275, 281 (6th Cir. 1985) (and cases cited therein); *see also Foley,* 488 F.3d at 389; *Montgomery v. Bagley,* 482 F.Supp.2d 919, 959-60 (N.D. Ohio 2007) (citing and quoting *United States v. Faulkner,* 538 F.2d 724, 729-30 (6th Cir.), *cert. denied,* 429 U.S. 1023 (1976)), *aff'd,* 581 F.3d 440 (6th Cir. 2009); *United States v. Moreno,* 933 F.2d 362, 371 (6th Cir.) (same), *cert. denied,* 502 U.S. 895 (1991).

[4]*Cf. Jones v. Bradshaw,* 489 F.Supp.2d 786, 820-23 (N.D. Ohio 2007) (holding that *Gonzalez-Lopez* was distinguishable, and that the Ohio Supreme Court reasonably applied as controlling precedent the Supreme Court's decision in *Wheat*–i.e., that "a criminal defendant's right to obtain counsel of choice is not absolute"–in upholding the trial court's denial of an "eleventh-hour motion" for a four-month continuance by a new attorney who first entered an appearance two hours after the jury was sworn in, upon balancing the petitioner's "right to choose counsel against the hardships the parties, witnesses, and jury would have to endure" if a continuance were granted).

to consider in ruling on these motions: (1) the timeliness of the motion; (2) the adequacy of the court's inquiry into the matter; (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense; and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice. *Trujillo,* 376 F.3d at 606 (and cases cited therein); *see also Mooneyham,* 473 F.3d at 291. The Sixth Circuit also has held that "[w]hen 'the granting of the defendant's request [for substitution of counsel] would almost certainly necessitate a last-minute continuance, the trial judge's actions are entitled to extraordinary deference.'" *United States v. Vasquez,* 560 F.3d 461, 467 (6th Cir.) (quoting *United States v. Whitfield,* 259 Fed.Appx. 830, 834 (6th Cir. Jan. 15, 2008) (not published in Federal Reporter), in turn quoting *United States v. Pierce,* 60 F.3d 886, 891 (1st Cir. 1995), *cert. denied,* 518 U.S. 1033 (1996)), *cert. denied,* 130 S.Ct. 476 (2009).

Here, under the first factor, and as the Ohio Court of Appeals emphasized, petitioner's request for new counsel made on the first day of trial was untimely. *See, e.g., Bailey v. Trombley,* No. 05-10190, 2008 WL 2937843, at *8 (E.D. Mich. July 24, 2008) (unpublished); *cf. White,* 451 F.2d at 1226 (holding that "the refusal of the [court] to appoint substitute counsel on the eve of the trial" is not improper); *Edsall v. Lazaroff,* 229 F.3d 213 (table), No. 99-3128, 2000 WL 263273, at *2 (6th Cir. Mar. 10, 2000) (unpublished), *cert. denied,* 531 U.S. 842 (2000).

The trial court did not conduct an extensive inquiry into the substance of petitioner's complaint about his court-appointed counsel. But, it appears clear from the record that the competency of counsel's representation was not at issue; rather, petitioner's complaint stemmed from the relatively short amount of time accorded to him to prepare a defense responding to the State's belated disclosure of "other acts" evidence. The record does not reveal the existence of any conflict between petitioner and his appointed counsel that was so great it resulted in a total lack of communication preventing an adequate defense. Therefore, upon weighing all the factors, the trial court acted within its discretion to decide in favor of the public's interest in the prompt and efficient administration of justice.

Accordingly, in sum, the undersigned concludes that the state courts' adjudication of the constitutional claim alleged in Ground One of the petition neither is contrary to nor involves an unreasonable application of clearly-established federal law as determined by the United States Supreme Court in *Wheat* and *Morris* and their progeny. In light of the circumstances presented herein, the trial court's decision to

deny petitioner's motion for substitution of counsel filed the first day of trial was reasonable and does not trigger concerns that petitioner was deprived of his Sixth Amendment right to counsel of his own choosing. Petitioner, therefore, is not entitled to relief based on the claim alleged in Ground One of the petition.

## B. Petitioner Has Waived The Claim Alleged In Ground Two Of The Petition As A Result Of His Procedural Default In The State Courts

In Ground Two of the petition, petitioner essentially challenges the validity of the plea agreement, in which he agreed to plead no contest to allied offenses of similar import and to the imposition of multiple punishments for those offenses in violation of the Double Jeopardy Clause. He contends that the state appellate courts committed constitutional error when they refused to remand the matter to the trial court for merger of the allied offenses and for a reduction in his sentence in accordance with the Ohio Supreme Court's April 2008 *Cabrales* decision. (Doc. 2, pp. 17-18).

In the return of writ, respondent contends that petitioner has waived this claim for federal habeas relief, which was not asserted as an independent assignment of error on direct appeal. It is respondent's position that to the extent petitioner raised the claim as an example of appellate counsel's ineffectiveness in his *pro se* application for reopening of the direct appeal, the claim is procedurally defaulted because petitioner failed to timely appeal the denial of his reopening application to the Ohio Supreme Court. (Doc. 5, Brief, pp. 8-11).

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). The claims must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985).

If petitioner fails to fairly present a claim through the requisite levels of state

appellate review to the state's highest court or commits some other procedural default relied on to preclude review of the merits of such claim by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue the claim in the state courts, his claim for habeas corpus relief is subject to dismissal with prejudice on the ground that it is waived. *See O'Sullivan,* 526 U.S. at 847-848; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

If, because of a procedural default, petitioner has not had a claim considered by the state's highest court and he can no longer present the claim to the state courts, he has waived such claim for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error, or that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, petitioner committed a procedural default by failing to raise his record-based double jeopardy claim in the state direct review proceedings. Although he alleged in his *pro se* application for reopening of the appeal that his appellate counsel should have asserted the claim as an assignment of error on direct appeal, under Ohio R. App. P. 26(B), the underlying claim of error cannot serve as an independent justification for reopening the appeal but rather only as an example of appellate counsel's ineffectiveness.

Petitioner, nevertheless, contends in his "traverse" brief that there is no procedural bar to review of the underlying double jeopardy claim, because it was fully exhausted in the state courts by way of his delayed application for reconsideration of the denial of his reopening application based on the Ohio Supreme Court's April 2008 *Cabrales* decision. (Doc. 10, pp. 7-8). The undersigned disagrees.

The only claim that would have been subject to reconsideration by the Ohio Court of Appeals at that point was petitioner's ineffective assistance of appellate counsel claim. In any event, the court did not address the merits of either the ineffective assistance of appellate counsel claim or the underlying double jeopardy claim in refusing to grant the motion for delayed reconsideration. The court, instead, denied the application based on concerns that the reopening of "every case potentially

17

affected by a later decision from the [Ohio] Supreme Court" would undermine the "finality of every judgment," and most importantly, because petitioner "could have appealed our denial of his [reopening] application, but he chose not to." (*See* Doc. 5, Ex. 16). The Ohio appellate court's reliance on these state procedural bars to review in denying the delayed application for reconsideration constitute adequate and independent state-law grounds for its decision, which foreclose review by this Court of the underlying federal constitutional claims. *See Harris,* 489 U.S. at 260-62.[5]

Accordingly, in sum, the Court concludes that petitioner procedurally defaulted the double jeopardy claim alleged in Ground Two of the petition in the state courts. He, therefore, has waived this ground for federal habeas relief unless he can show cause and prejudice for his default or that failure to consider the claim will result in a fundamental miscarriage of justice. *See Coleman,* 501 U.S. at 750; *Murray,* 477 U.S. at 485; *Engle,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

Petitioner is unable to demonstrate that his appellate counsel's ineffectiveness constitutes "cause" for his failure to raise the double jeopardy claim as an independent ground for relief on direct appeal. Although it is well-settled that appellate counsel's ineffectiveness may amount to cause for a procedural default occurring in an appeal as of right to the Ohio Court of Appeals, cause cannot be established if the ineffective assistance of appellate counsel claim was itself procedurally defaulted. *See Murray v. Carrier,* 477 U.S. 478, 488-89 (1986); *see also Edwards v. Carpenter,* 529 U.S. 446, 451-53 (2000); *Burroughs v. Makowski,* 411 F.3d 665, 667-68 (6th Cir.) (per curiam), *cert. denied,* 546 U.S. 1017 (2005).

Here, petitioner procedurally defaulted the ineffective assistance of appellate counsel claim when he failed to file a timely appeal to the Ohio Supreme Court from the denial of his reopening application. At this juncture, no avenue remains open to

---

[5]It is noted that in cases where the last state court to render a reasoned opinion on the claim explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the claim. *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991). In the instant case, the Ohio Supreme Court's unexplained decision summarily dismissing petitioner's appeal "as not involving any substantial constitutional question" must be presumed to rely on the same state procedural bars to review that the Ohio Court Appeals cited in denying petitioner's delayed application for reconsideration. *See Taqwiim v. Johnson,* 229 F.3d 1154 (table), No. 99-3425, 2000 WL 1234322, at **3 (6th Cir. Aug. 22, 2000) (unpublished) (citing *Levine v. Torvik,* 986 F.2d 1506, 1517 n.8 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), and *Ylst,* 501 U.S. at 803-04), *cert. denied,* 531 U.S. 1089 (2001).

petitioner in the state courts to pursue such a claim because delayed appeals to the Ohio Supreme Court of Ohio are not permitted for "appeals involving postconviction relief, including appeals brought pursuant to ... App. R. 26(B)." *See* Rule II, § 2(A)(4)(a)-(b), Rules of Practice of the Supreme Court of Ohio. Any argument that petitioner's procedural default was cured by way of his subsequent, fully-exhausted, delayed application for reconsideration is unavailing, because the state courts refused to reconsider the denial of the reopening application in part because petitioner had not appealed that decision to the Ohio Supreme Court.

Petitioner also is unable to prevail on any claim that changes in the controlling law stemming from the Ohio Supreme Court's April 2008 decision in *Cabrales* constitute "cause" for his procedural default in the state courts. The Supreme Court has held that "where a ... claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures." *Reed v. Ross,* 468 U.S. 1, 16 (1984); *see also Bousley v. United States,* 523 U.S. 614, 622 (1998). However, at the time of petitioner's direct appeal, there was sufficient debate among the Ohio appellate courts about the double jeopardy issue posed herein that petitioner is unable to establish cause based on this argument. *Cf. Bousley,* 523 U.S. at 622. In any event, even assuming, *arguendo,* that the legal basis for the claim was not reasonably available to appellate counsel at the time of petitioner's direct appeal, petitioner is unable to rely on this argument to justify his subsequent default in failing to appeal the denial of his *pro se* reopening application, which raised the double jeopardy claim as an example of appellate counsel's ineffectiveness, to the Ohio Supreme Court. Finally, to the extent petitioner contends that his default should be excused because it would have been "futile" for him to pursue a further appeal before the state supreme court decided *Cabrales,* the Supreme Court has expressly rejected such an argument, holding that "futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" *Bousley,* 523 U.S. at 623 (quoting *Engle,* 456 U.S. at 130 n.5).

Therefore, the Court concludes that petitioner is unable to establish cause for his procedural default in this case.

A closer question is presented as to whether petitioner's procedural default should be excused to prevent a fundamental miscarriage of justice. Under this exception, review is permitted in those "rare" or "extraordinary" cases where it is shown that the alleged constitutional violation "probably resulted in the conviction of

19

one who is actually innocent." *Bousley,* 523 U.S. at 623 (quoting *Murray,* 477 U.S. at 496); *see also Schlup v. Delo,* 513 U.S. 298, 319-21 (1995).

Here, the argument can be made that petitioner may have entered a plea of no contest and agreed to the imposition of consecutive sentences for drug possession and trafficking offenses that the Ohio Supreme Court later determined in *Cabrales* are "allied offenses of similar import." *See Cabrales,* 886 N.E.2d at 188-89 (holding that "trafficking in a controlled substance under R.C. 2925.03(A)(2) and possession of that same substance under R.C.§ 2925.11(A) are allied offenses of similar import" and, therefore, must merge for sentencing purposes).[6] Under this theory, further arguments can be made that petitioner's no contest plea is invalid because the parties were mistaken about petitioner's eligibility for the imposition of consecutive sentences under the Double Jeopardy Clause, and that petitioner is thus "actually innocent" of the sentence that was imposed.[7]

---

[6] In *Cabrales,* 886 N.E.2d at 188, the Ohio Supreme Court also held that, conversely, the offense of possession and the offense of trafficking as defined in Ohio Rev. Code § 2925.03(A)(1) are not allied offenses of similar import. In the instant case, the indictment did not cite the specific trafficking provision under which petitioner was charged. However, the words used in Count Two to describe the offense track the language set forth in Ohio Rev. Code § 2925.03(A)(2), as opposed to § 2925.03(A)(1). (*See* Doc. 5, Ex. 1).

[7] It is noted that the Supreme Court has held that a defendant may waive his right to assert a double jeopardy claim by entering a guilty or no contest plea. *See United States v. Broce,* 488 U.S. 563, 565 (1989); *see also Brady v. United States,* 397 U.S. 742, 757 (1970) ("A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action."). However, the Supreme Court also has recognized an exception to this general rule, holding that "[w]here the State is precluded by the United States Constitution from haling a defendant into court on a charge, federal law requires that a conviction on that charge be set aside even if the conviction was entered pursuant to a counseled plea of guilty." *Menna v. New York,* 423 U.S. 61, 62-63 (1975) (citing *Blackledge v. Perry,* 417 U.S. 21, 30-31 (1974)). In so holding, the Court expressly noted that a plea of guilt does not waive a double jeopardy claim challenging a charge that "*judged on its face* ... is one which the State may not constitutionally prosecute." *Id.* at 63 n.2; *see also Broce,* 488 U.S. at 765-66; *cf. Stallworth v. McDonough,* No. 3:05cv427/RV/MD, 2007 WL 1789253, *1, *12-13 (N.D. Fla. June 19, 2007) (unpublished) (holding that it was an unreasonable application of *Menna* to conclude that the petitioner's double jeopardy "multiple punishment" claim, which "implicate[d] the legitimacy *ab initio* on the charging information," was waived by the petitioner's no contest plea).

The "prototypical example of 'actual innocence' ... is the case where the State has convicted the wrong person of the crime." *Sawyer v. Whitley,* 505 U.S. 333, 340 (1992). Although in *Sawyer* the Supreme Court recognized that the exception applies to capital cases where it is shown that the defendant is actually innocent of the death penalty, the Court has yet to decide the issue, which has caused a split among the circuit courts, as to whether the exception extends to the noncapital sentencing context. *See Dretke v. Haley,* 541 U.S. 386, 393 (2004). In the absence of guidance from the Supreme Court, some circuit courts have held that the exception does not extend to any claims of sentencing error in noncapital cases. *See, e.g., Embrey v. Hershberger,* 131 F.3d 739, 740 (8th Cir. 1997) (en banc), *cert. denied,* 525 U.S. 828 (1998); *United States v. Richards,* 5 F.3d 1369, 1371 (10th Cir. 1993); *cf. Hope v. United States,* 108 F.3d 119, 120 (7th Cir. 1997) (holding that the "actual innocence" exception as extended to sentencing issues did not survive the Antiterrorism and Effective Death Penalty Act of 1996 and that, therefore, "a successive motion under 28 U.S.C. § 2255 (and presumably a successive petition for habeas corpus under section 2254...) may not be filed on the basis of newly discovered evidence unless the motion challenges the conviction and not merely the sentence").

In contrast, in a case involving the rescission of probation and imposition of a sentence based on the petitioner's breach of a plea agreement condition that he may not have committed, the Second Circuit held in general terms that the actual innocence exception applies to noncapital sentencing decisions. *See Spence v. Superintendent, Great Meadow Corr. Facility,* 219 F.3d 162, 170-71 (2nd Cir. 2000). In another case, a district court within the Second Circuit held that the actual innocence exception "is properly extended to the narrow group of non-capital cases where the petitioner: (1) alleges and proves that a constitutional violation resulted in the sentence...; (2) demonstrates that he is innocent of the facts necessary to impose his sentence by clear and convincing evidence...; and (3) proves that the sentence received exceeded the maximum permitted by applicable statute." *Borrego v. United States,* 975 F.Supp. 520, 525 (S.D.N.Y. 1997). In *Borrego,* the court concluded that the federal prisoner's § 2255 petition fell within the actual innocence exception "[i]n view of the conceded Ex Post Facto violation," which demonstrated that the petitioner was innocent of the facts necessary to impose his sentence and that the sentence exceeded the maximum available penalty for his crime. *Id.* at 527.

Finally, the Fourth Circuit has held that the actual innocence exception applies to noncapital sentencing, but "only in the context of eligibility for application of a career offender or other habitual offender [sentencing] provision." *United States v.*

21

*Mikalajunas,* 186 F.3d 490, 495 (4th Cir. 1999), *cert. denied,* 529 U.S. 1010 (2000).[8]

The Sixth Circuit has not issued a published decision addressing this issue, except to point out in one case that the Supreme Court had noted in *Dretke,* 541 U.S. at 396, that the question whether or not "to extend *Sawyer*'s 'innocence of the penalty' analysis to non-capital penalties" is a "difficult unanswered question." *See Ross v. Berghuis,* 417 F.3d 552, 557 (6th Cir. 2005). However, in prior unpublished decisions, which have been cited and followed by district courts within the Sixth Circuit, the court has summarily held that the "actual innocence exception is not available ... in the case of a challenge to a noncapital sentence." *See, e.g., Flahardy v. United States,* 67 F.3d 299 (table), No. 95-5281, 1995 WL 570925, at *2 (6th Cir. Sept. 27, 1995) (unpublished); *Black v. United States,* 61 F.3d 903 (table), No. 95-5041, 1995 WL 445718, at *2 (6th Cir. July 26, 1995) (unpublished); *see also Gibbs v. United States,* Nos. 2:97cv55, 2:91cr128(19), 2009 WL 1024456, at *7-8 (S.D. Ohio Apr. 15, 2009) (Graham, J.) (unpublished) (involving challenge to sentence as a career offender); *Davis v. Stegall,* No. Civ. 02-73093-DT, 2003 WL 1867920, at *5 (E.D. Mich. Mar. 17, 2003) (unpublished); *cf. Dabbs v. Bell,* No. 3:07-0048, 2008 WL 743967, at (M.D. Tenn. Mar. 19, 2008) (unpublished) (without citing the unpublished Sixth Circuit decisions, the district court ruled after "stud[ying] the competing authority" that "the actual innocence exception should not apply to non-capital sentences").

In light of the unpublished Sixth Circuit precedents followed within this circuit, the undersigned declines to find that the actual innocence exception should apply to any claim that, as a result of a double jeopardy violation, petitioner is actually innocent of the consecutive sentences that were imposed in this case. *Cf. Gibbs, supra,* 2009 WL 1024456, at *7-8; *see also Selsor v. Kaiser,* 22 F.3d 1029, 1035-36 (10th Cir. 1994) (in an analogous case, the Tenth Circuit rejected the petitioner's claim that because the parties had agreed he was placed in double jeopardy by virtue of being punished for

---

[8]In *Mikalajunas,* 186 F.3d at 495, the court reasoned that if the actual innocence exception applied more broadly to cover any error in sentencing it "would conflict squarely with Supreme Court authority indicating that generally more than prejudice must exist to excuse a procedural default." The dissent argued, however, that the "issue ... is not whether the actual innocence exception swallows the cause and prejudice rule," but "whether one believes that it is fundamentally unjust to keep a prisoner in jail for one year or four years longer than the correct sentence." *See id.* at 499. It appears that the Fifth Circuit has adopted the position taken by Fourth Circuit majority in *Mikalajunas. See Haley v. Cockrell,* 306 F.3d 257, 266 (5th Cir. 2002), *vacated on other grounds,* 541 U.S. 386 (2004).

22

both felony murder and the underlying armed robbery felony, the petitioner was actually innocent of the sentence he received for armed robbery; in so ruling, the court distinguished cases applying the actual innocence exception to sentences that required "a separate showing from the proof required to convict").

In any event, to the extent that petitioner's "quarrel is not really with his sentence," but with the fact that he was multiply convicted for the same conduct, numerous courts have held that a double jeopardy claim does not satisfy the fundamental miscarriage of justice exception in the absence of a showing that the defendant is factually (as opposed to legally) innocent of the underlying offenses. *See, e.g., Selsor,* 22 F.3d at 1034-35 (relying on *Steele v. Young,* 11 F.3d 1518, 1522 & n.8 (10th Cir. 1993), and *Wallace v. Lockhart,* 12 F.3d 823, 826-27 (8th Cir. 1994), in holding that a meritorious double jeopardy claim was insufficient to establish a fundamental miscarriage of justice); *Waite v. United States,* 74 F.3d 1242 (table), No. 95-1384, 1996 WL 4359, at *1 (7th Cir. Jan. 3, 1996); *Drummond v. United States,* 41 F.3d 664 (table), No. 94-60419, 1934 WL 2663, at *2 (5th Cir. Nov. 23, 1994) (per curiam) (unpublished); *Harms v. Conway,* No. CV06-34-S-LMB, 2007 WL 2265116, at *6 (D. Idaho Aug. 6, 2007) (unpublished); *Donaldson v. United States,* Nos. 01-CV-1061(NPM), 92-CR-51-001, 2003 WL 22959502, *4 (N.D.N.Y. Oct. 27, 2003) (unpublished); *Montemayor de la Paz v. United States,* No. Civ.A.4:01cv344-Y, 2002 WL 66915, at *3-4 (N.D. Tex. Jan. 11, 2002) (unpublished), *appeal dismissed,* 54 Fed.Appx. 794 (5th Cir. Dec. 11, 2002) (not published in Federal Reporter); *United States v. Wesson,* No. 97 C 7339, 1998 WL 30695, at *11 (N.D. Ill. Jan. 22, 1998) (unpublished);[9] *cf. Embrey,* 131 F.3d at 741.

Even assuming, *arguendo,* that a meritorious double jeopardy claim should fall within the fundamental miscarriage of justice exception, in this case, evidence was disclosed at the plea hearing indicating that in addition to the 442 grams of crack cocaine discovered on December 14, 2005, which led to petitioner's indictment for drug possession and trafficking, the State was planning to present evidence at petitioner's trial that "between October 1, 2005 and December 16, 2005 on at least five occasions

---

[9]In *Wesson,* the district court distinguished between cases where the "Supreme Court's interpretation of a criminal statute potentially made the petitioner *actually innocent* of the crime for which he stood convicted," and cases involving an alleged double jeopardy violation. The court pointed out: "The difference is this: [Petitioner] is not actually innocent of [the criminal charge]," but rather "complains of a violation of the constitutional right not to be punished twice for the same offense." *Wesson, supra,* 1998 WL 30695, at *11 (emphasis in original).

23

but more likely every day or every other day, ... this Defendant brought into Scioto County roughly 3,000 grams of crack cocaine which has a street value of One and a half million dollars." (*See* Doc. 5, May 8, 2006 Plea and Sentencing Tr. 18). This evidence suggests that, contrary to petitioner's contention, petitioner could have been separately convicted and sentenced on both the possession and trafficking charges.

Accordingly, in sum, the Court concludes that petitioner has waived the double jeopardy claim alleged in Ground Two of the petition in the absence of a showing of cause for his procedural default in the state courts or that failure to consider the claim will result in a fundamental miscarriage of justice.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 2) be **DENIED** with prejudice.

2. A certificate of appealability should issue with respect to both grounds for relief alleged in the petition. With respect to the claim alleged in Ground One, which was reviewed on the merits herein, the issue presented is "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel,* 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). With respect to the claim alleged in Ground Two, which this Court has concluded is waived and thus procedurally barred from review, "jurists of reason" would find it debatable (1) whether this Court is correct in its procedural ruling, and (2) whether petitioner has stated a viable constitutional claim. *See Slack,* 529 U.S. at 484-85.

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would be taken in "good faith," and therefore **GRANT** petitioner leave to appeal *in forma pauperis. See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: ___1/15/10___

cbc

Timothy S. Hogan
United States Magistrate Judge

J:\BRYANCC\2010 habeas orders\08-896denypet.6thA-substitutecounsel.waiv-DJ-alliedoffense.grant-coa.wpd

Santravis Cobb,
    Petitioner

vs

Case No. 1:08cv896
(Barrett, J.; Hogan, M.J.)

Warden, Chillicothe Correctional
Institution,
    Respondent

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), within fourteen (14) days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).